STANDIFER, APPELLEE, *v.* ARWOOD, APPELLANT.

(No. CA83-07-047 — Decided June 11, 1984.)

*Michael E. Powell* and *Harold Jarnicki,* for appellee.

*William G. Fowler,* for appellant.

CASTLE, J.   Prior to the new Ohio Parentage Act, R.C. Chapter 3111, becoming effective on June 29, 1982, plaintiff-appellee, Carolyn Standifer, instituted this lawsuit alleging defendant-appellant, Orville Arwood, to be the father of a child born January 18, 1973, named Jack David Hipsher. The case came to trial in the Court of Common Pleas of Warren County, on February 24, 1983, after the effective date of the new Act. The trial court followed the new Act as controlling law.

Before trial, appellant submitted to a genetic test for the purpose of admitting into evidence the results, should his non-paternity have been indicated. The results, indicating paternity, were received into evidence at trial, to which counsel excepted. Further, counsel objected to the trial court's refusal to dismiss due to lack of subject matter jurisdiction. Thereafter, the trial court rendered judgment for appellee. Subsequently, appellant filed motions for judgment n.o.v. and for new trial, which were overruled. Appellant appeals from the judgment.

The genetic tests administered to appellant consisted of tests for the presence or absence of common blood antigens, related blood serums, antigens, human lympholyte antigens, serum enzymes and serum proteins. The tests were made by qualified experts, as determined by the court. These tests are now commonly known as HLA tests, or "Human Leukocyte Antigen" tests.

Appellant asserts three assignments of error which shall be addressed seriatim.

They are as follows:

FIRST ASSIGNMENT OF ERROR

"The trial court's error results in a violation of Article II, Section 28, of the Ohio Constitution, Retroactive laws, etc., when it submitted to the jury as evidence pursuant to Sections 3111.09 and 3111.10, Revised Code, the results of a blood test taken by the appellant."

## SECOND ASSIGNMENT OF ERROR

"The trial court erred to the prejudice of Defendant-Appellant when it failed to dismiss this case due to lack of subject matter jurisdiction."

## THIRD ASSIGNMENT OF ERROR

"The trial court erred to the prejudice of Defendant-Appellant in not requiring all proper persons, pursuant to Section 3111.07, Revised Code, be made parties in this trial."

### I

The issue presented for review by appellant's first assignment of error is whether the court violated Section 28, Article II of the Ohio Constitution when it relied on R.C. 3111.09 and 3111.10 as authority for submitting as evidence to the jury the results of the genetic tests taken by appellant.

For the following reasons, we answer the question presented in the negative and find the first assignment without merit.

Section 28, Article II of the Ohio Constitution prohibits the state legislature from passing laws of a retroactive nature. The Supreme Court of Ohio, in *Kilbreath* v. *Rudy* (1968), 16 Ohio St. 2d 70 [45 O.O.2d 370], determined that this constitutional prohibition relates only to the passage of laws which affect substantive rights, and does not relate to the passage of laws which affect a remedy, a procedure, or a method of review. *Id.* at paragraph one of the syllabus.

The court held that the legislature may lawfully provide for the application of laws of a remedial or procedural nature to any proceeding conducted after the adoption of such law. *Id.* at paragraph two of the syllabus.

The gravamen of appellant's argument herein is that the legislature's adoption of R.C. 3111.09 and 3111.10, which provide for the admission into evidence of genetic test results ordered by the court *sua sponte* or upon a party's motion without regard to the results' sole relevance to the defense of a paternity action, impermissibly impaired a vested right of appellant under former R.C. 3111.16 to have blood test results receivable in evidence only where the results indicated appellant not to be the father of the child. Appellant submits that the new R.C. 3111.09 and 3111.10 are substantive in nature, rather than procedural or remedial, and thus may not constitutionally be applied retrospectively in the case, to abrogate the usage of the provision under former R.C. 3111.16 that test results be receivable in evidence only when favorable to the defense.

We find appellant's analysis in the matter erroneous. The Supreme Court of Ohio has determined that:

"[A] statute changing the rules of evidence is usually classed with those affecting the remedy, and unless it impairs the obligation of a contract, or destroys vested rights, [it] is not repugnant to the constitution." *Magrudor* v. *Esmay* (1878), 35 Ohio St. 221, 238.

With specific reference to G.C. 12122-1, the predecessor to former R.C. 3111.16, one Ohio court determined that blood tests are not conclusive evidence of the non-paternity of an alleged father, and that such tests are admitted only for what they are worth. *State, ex rel. Slovak,* v. *Holod* (1939), 63 Ohio App. 16, 20 [16 O.O. 257].

Admission of test results under new R.C. 3111.09 and 3111.10, therefore, impairs no vested rights of defendants in paternity actions to have those results admitted solely where beneficial to their defense. Admission of favorable results under former R.C. 3111.16 in no way set up a conclusive presumption of non-paternity; *i.e.,* conclusive or irrebuttable presumption which might be considered substantive in nature. See *Wieman* v. *Updegraff* (1952), 344 U.S. 183 (conclusive presumptions effect a rule of

substantive law); *Ellis* v. *Henderson* (C.A. 5, 1953), 204 F.2d 173 (same), certiorari denied (1953), 346 U.S. 873; *Commr. of Internal Revenue* v. *Clark* (C.A. 7, 1953), 202 F. 2d 94 (same); *United States* v. *Jones* (C.A. 9, 1949), 176 F. 2d 278 (same). But, see, *State ex rel. Holdridge,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 175 [40 O.O.2d 162] (prima facie proof factor is remedial not substantive). Under former R.C. 3111.16, blood tests results might be used as evidence, but their utilization in the cause would not serve to resolve the paternity dispute as a matter of law; thus, R.C. 3111.16 may not be said to have set up vested, substantive rights for a defendant in a paternity action.

The legislature's amendment of R.C. 3111.09 and 3111.10 to provide for the admission of genetic test results whether or not favorable to a defendant clearly affects only procedure or remedy and not substance.

The Supreme Court of Ohio has determined that no one has a vested right in an existing remedy and that no one has a vested right in any particular remedy. *State, ex rel. Michaels,* v. *Morse* (1956), 165 Ohio St. 599, 605 [60 O.O. 531]; *Lash* v. *Mann* (1943), 141 Ohio St. 577, 582 [26 O.O. 158]; *State* v. *Barlow* (1904), 70 Ohio St. 363, 374. Appellant cannot be said to have a vested right in a test result admissible only where favorable to his defense, inasmuch as no right in this evidentiary provision had vested. The conclusion reached herein, that the admission of genetic tests pursuant to the new parentage act affects remedy or procedure only and not substance, is consistent with the well-reasoned opinion of Judge Koehler, of this court, rendered in *Collins* v. *Harper* (June 1, 1983), Fayette App. No. 82-CA-13, unreported, wherein he opined that R.C. 3111.09 and 3111.10 created a procedural change in the law, if indeed there was change at all. The *Collins* court agreed with appellee

therein that HLA test results would have been admissible under former R.C. 3111.16 were such tests then available. *Id.* at 9.

Moreover, appellant's contention that the amended sections impose new duties and obligations on appellant is equally without merit. If anything, the new provisions for genetic testing, particularly R.C. 3111.09(D), are more beneficial to a defendant than was R.C. 3111.16. Under R.C. 3111.09(D) it is mandatory upon the court to enter judgment in favor of defendant where examiners concur in finding results indicative of non-paternity. Such a potential benefit of augmented accuracy and enhanced likelihood of ascertainment of the truth can hardly be deemed a "new duty" or "new obligation," as appellant would suggest.

The Supreme Court of Ohio in *Owens* v. *Bell* (1983), 6 Ohio St. 3d 46, 51, recently noted the "* * * scientifically advanced status of these tests," in reference to the HLA series of tests for blood and lymph antigens, and serum proteins and enzymes. The *Owens* court determined that "* * * R.C. 3111.16 would not have precluded the introduction of HLA test reports in * * * proof of paternity [cases]." *Id.* at 50. The court concluded that the General Assembly had not considered HLA tests at the time of adoption of former R.C. 3111.16, and "* * * that it was not the legislative intent to deny the use of these tissue typing genetic test results * * *." *Id.*

Thus, the trial court herein committed no error when it allowed appellant's test results to be admitted into evidence pursuant to R.C. 3111.09 and 3111.10. Section 28, Article II of the Ohio Constitution has not been violated. The application of the new statute to the proceeding conducted after the passage of the law was well within the constitutional parameters of *Kilbreath, supra.*

Appellant's first assignment of error is overruled.

## II

The issue presented for review by appellant's second assignment of error is whether R.C. 3111.06, which confers original jurisdiction on the juvenile court, renders the trial court without power to hear this case due to lack of subject matter jurisdiction.

Appellant asserts that R.C. 3111.06 clearly takes original jurisdiction in a paternity action away from the trial court. Appellant cites no authority other than the language of the statute itself to support this proposition.

In pertinent part, R.C. 3111.06 provides:

"(A) The juvenile court has original jurisdiction of any action authorized under this chapter. * * *"

We begin our analysis of the issue by noting, as did the Franklin County Court of Appeals in *State, ex rel. Mastracci,* v. *Rose* (1947), 79 Ohio App. 556, 558 [35 O.O. 388], that: "The Common Pleas Court being a court of general jurisdiction of all actions * * *, it has jurisdiction of all actions unless its jurisdiction is taken away by statute."

Thus, it may fairly be said that unless a statute grants exclusive jurisdiction or exclusive original jurisdiction to another court, the court of common pleas may properly assert jurisdiction over a matter.

R.C. 3111.06 indicates that the juvenile court has original jurisdiction over actions authorized in the chapter, which includes actions to determine a child's parentage.

R.C. 2151.23 sets forth several specifically enumerated actions where juvenile court has *exclusive original jurisdiction.* In subsection (B), the statute sets forth several more specific actions in which the juvenile court has merely original jurisdiction, including paternity actions. R.C. 2151.23(B)(2).

Generally, as appellee aptly points out, parentage actions are classified as civil actions. R.C 3111.08(A). In our view a court of common pleas may properly assume jurisdiction of a parentage or paternity action, as such jurisdiction has not been taken away by the granting of exclusive original jurisdiction to another court.

Appellant's second assignment of error is overruled.

## III

The issue presented for review by appellant's third assignment of error is whether the trial court's refusal to make parties in this suit, all proper persons as set forth in R.C. 3111.07, resulted in error causing prejudice to appellant.

Appellant submits that appellee's ex-husband, a "presumed father" by virtue of his having been divorced from the mother not longer than three hundred days before the birth of the child, should have been made a party to the action under the mandate of R.C. 3111.07 which, in pertinent part, states:

"(A) The natural mother, each man presumed to be the father under section 3111.02 of the Revised Code, and each man alleged to be the natural father, shall be made parties * * *." Under R.C. 3111.03(A)(1), a man is presumed to be the natural father where the man and the mother have been married to each other, and the child is born within three hundred days after the marriage is ended in divorce. Appellant asserts that the ex-husband, who falls within the above definition, should have been in the courtroom at trial as a party so that the jury could have made the necessary visual comparison of physical features to aid in their deliberations.

The record is devoid of anything to suggest that the ex-husband was subject to the jurisdiction of the court. Appellee

notes that appellant failed to make an objection in a timely fashion at trial, to move for his joinder at trial, or to compel his attendance at trial by subpoena.

The general rule may be stated that a reviewing court will only consider such errors in a lower court as were preserved by objection or otherwise; errors in a trial not brought to the attention of the court are waived and cannot be raised on appeal. See, *e.g., Stores Realty Co.* v. *Cleveland* (1975), 41 Ohio St. 2d 41 [70 O.O.2d 123]; *Snyder* v. *Stanford* (1968), 15 Ohio St. 2d 31 [44 O.O.2d 18]; *Rosenberry* v. *Chumney* (1960), 171 Ohio St. 48 [12 O.O.2d 56]. This rule is equally applicable to the interposition of objections to misjoinder of parties at trial; failure to object timely constitutes waiver. See, *e.g., Crane Twp., ex rel. Stalter,* v. *Secoy* (1921), 103 Ohio St. 258. There being no indication that appellant brought the non-joinder of appellee's ex-husband to the attention of the trial court in a timely fashion, appellant shall not be heard to so complain before this reviewing court.

The court notes that even had the objection to non-joinder been properly preserved, given the substantial credible evidence adduced at trial, this court would be hard pressed to find reversible, prejudicial error in the omission to join.

Accordingly, the third assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

HENDRICKSON, P.J., and KOEHLER, J., concur.

CASTLE, retired, of the Twelfth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.