48

JOHNSON ET AL., APPELLEES, *v.* ADAMS, APPELLANT.

[Cite as Johnson *v.* Adams (1985), 18 Ohio St. 3d 48.]

(No. 84-460—Decided June 26, 1985.)

*Susan E. Boyer,* assistant prosecuting attorney, for appellees.
*Eslocker & Grim* and *William A. Grim,* for appellant.

SWEENEY, J.  In the first opinion that it filed in the instant case, the Court of Appeals for Washington County expressly held that amended R.C. Chapter 3111, as effective on June 29, 1982, would be applicable on remand to the appellees' cause of action. Later, in its opinion on reconsideration, the appellate court provided a different analysis and attempted to distinguish *Hall* v. *Rosen, supra,* so that the conclusive presumption of paternity set forth therein would not apply on remand to the instant case. Even under this new analysis, however, the court stated that "the [R.C.] Chapter 3111 provision which changes the irrebuttable presumption of paternity into a rebuttable presumptions [*sic*], in this limited sense, [is] retroactive." Based upon this statement, the appellant raises the issue of whether amended R.C. Chapter 3111, as effective on June 29, 1982, has any applicability to the trial court's grant of summary judgment, which was rendered for appellant in September 1981. We find that it does not.

A basic rule of statutory construction, as codified at R.C. 1.48, provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." The legislation in this case, amending R.C. Chapter 3111, was enacted in 1982 upon passage of Am. Sub. H. B. No. 245. Section 3 of this bill provides that "[a]n action may be commenced pursuant to sections 3111.01 to 3111.19 of the Revised Code * * * to

establish the father and child relationship * * *, irrespective of whether a child is born prior to, or on or after, the effective date of this act." In the sense that this section of Am. Sub. H.B. No. 245 makes amended R.C. Chapter 3111 applicable to causes of action accruing prior to its effective date, R.C. Chapter 3111 is " expressly made retrospective." However, such retrospectivity clearly does not allow the reversal, on appeal, of a *judgment* rendered prior to the June 29, 1982 effective date of amended R.C. Chapter 3111. To permit such a result in this case would cross the line between permissible "retrospectivity" and unconstitutional "retroactivity,"[2] while inviting the legislature to become a super-judiciary with the power to reverse judgments previously rendered in specific cases. For these reasons, we hold that those sections of amended R.C. Chapter 3111 that became effective on or after June 29, 1982 have no application to paternity actions in which judgment was entered prior to that date.

The second issue presented herein is whether *Hall* v. *Rosen, supra,* and *Miller* v. *Anderson* (1885), 43 Ohio St. 473, which effectively establish a conclusive presumption of paternity in cases in which a man married a woman with knowledge that she is pregnant, should continue to serve as valid, binding precedent in those paternity cases that are not governed by amended R.C. Chapter 3111.

We start our analysis by noting that " '[p]ermanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments,' especially when they are 'not necessarily or universally true in fact, and when the state has reasonable alternative means of making the crucial determination.' " *Hall* v. *Rosen, supra,* at 142 (Justice William B. Brown, dissenting, quoting *Vlandis* v. *Kline* [1973], 412 U.S. 411, 446 and 452). The conclusive presumption of paternity set forth in *Hall* and *Miller* deprives a child of support from its biological father, while imposing a duty of support upon another man who may have had no intention of accepting such a burden at the time that he married the child's mother. In that this conclusive presumption cannot be said to be founded upon a "universal truth," we continue our analysis with a critical eye towards the rationale behind the presumption.

The majority opinion in *Hall* offered two major bases for continued adherence to a conclusive presumption of paternity. The *Hall* majority focused primarily on the relationship between the child's mother and the man that she married during her pregnancy and concluded that, by marrying the pregnant woman, "the husband has voluntarily assumed the

---

[2] Section 28, Article II of the Ohio Constitution, states, in relevant part: "The general assembly shall have no power to pass retroactive laws * * *." This prohibition has been interpreted to have "application to laws affecting substantive rights," *Kilbreath* v. *Rudy* (1968), 16 Ohio St. 2d 70 [45 O.O.2d 370], paragraph one of the syllabus; and, because the trial court's determination clearly established certain "substantive rights" in the parties herein, the legislature had no power to alter those rights through enactment of amended R.C. Chapter 3111.

burden of supporting the child." *Id.* at 139. We cannot reach the same conclusion so readily. As Justice William Brown noted in his dissent in *Hall,* "common sense dictates that a man's temporary concern for an unwed mother does not necessarily include a permanent concern for the welfare of her offspring." *Id.* at 142. This "common sense" approach prevents us, in the instant case, from transforming Riggle's two-week relationship with a pregnant Carmen Johnson into a commitment to provide support for the first eighteen years of Christopher Johnson's life.[3] Intent cannot always readily be discerned from conduct; and, in light of this state's statutory framework governing adoptions (which provides a specific vehicle for a man to clearly express his intent to adopt his wife's children), we conclude that it is unwise to create an adoption by judicial fiat every time that a man marries a pregnant woman.

The second basis relied upon by the *Hall* majority for continued enforcement of a conclusive presumption of paternity was that "inherent evils * * * [would] be aroused" by rejection of the presumption. *Hall* at 140. The most important "evil" sought to be prevented by the majority was the potential for " 'father-shopping,' *i.e.,* seeking support from the most successful of possible candidates." *Id.* The majority feared that such paternity actions would "not only present the problem of the staleness of the evidence, but also the possibility of disrupting other established families by moral disparagement and suddenly increased financial responsibilities." *Id.*

If, *arguendo,* "father shopping" *was* a substantial risk to be borne upon rejection of the conclusive presumption of paternity, this risk certainly has been minimized with the medical and legal acceptance of Human Leukocyte Antigen ("HLA") tests (which are basically genetic comparison examinations). In the second paragraph of the syllabus in *Owens* v. *Bell* (1983), 6 Ohio St. 3d 46, we held that "HLA tests constitute relevant evidence to establish the probability of paternity." Because these tests, when used in concert with traditional blood grouping tests, raise the probability of excluding non-fathers to at least ninety percent,[4] there is little incentive for a mother to bring a paternity action unless she is relatively certain of the identity of her child's father. Additionally, the accuracy of the HLA-blood-grouping test combination dramatically reduces the possibility that "stale" evidence might form the basis for judgment in a paternity action.

---

[3] We make no determination as to whether any cause of action can be brought against Robert Riggle. Even if we were to assume, *arguendo,* that Riggle does have some duty to support Christopher Johnson, however, such duty ordinarily will not affect the duty of support that others might owe to Christopher.

[4] See *Owens* v. *Bell, supra,* at fn. 5 (citing Miale, Jennings, Rettberg, Sell & Krause, Joint AMA-ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage [1976], 10 Fam. L. Q. 247, 256).

With regard to the *Hall* majority's concern that a biological father and his family might suffer "moral disparagement * * * [or] suddenly increased financial responsibilities" as a result of being ordered to provide support for his child, we make reference to amended R.C. Chapter 3111. As it now reads, R.C. Chapter 3111 reflects the public-policy concern that a child should not be made a "ward of the state" when some individual, other than the state, justifiably is responsible for that child's welfare. By applying a *rebuttable* presumption of paternity to those cases in which a child's natural father is alleged to be someone other than the man who was married to the child's mother at the time of its birth, the legislature (through amended R.C. Chapter 3111) has placed a child's welfare above the "moral disparagement" that a biological father might endure after being made subject to an order for support. We agree with the legislature's priorities in this arena.

The policy concerns behind the rebuttable presumption of paternity that is set forth in amended R.C. Chapter 3111 are legitimate in that they focus upon the need to provide all children with basic support. The application of a rebuttable, rather than a conclusive, presumption of paternity reflects the realities of human relations by recognizing that not every man who marries a pregnant woman intends by such marriage to adopt the offspring who are born of such pregnancy. Further, a rebuttable presumption of paternity, unlike a conclusive presumption, does not relieve a man of his responsibility to provide support for the children that he has fathered. Thus, although amended R.C. Chapter 3111's rebuttable presumption of paternity is not applicable to the instant case, we are convinced that the rationale behind the rebuttable presumption warrants its applicaton in those paternity actions that are outside the scope of R.C. Chapter 3111.

The reasons for application of a conclusive presumption of paternity, as set forth in *Miller* v. *Anderson* and *Hall* v. *Rosen, supra,* are no longer compelling. Medical advancements in the form of improved paternity tests, in combination with legitimate public policy concerns for the welfare of children, now favor application of a rebuttable presumption of paternity whereby the biological father of a child will not be able to escape all responsibility for the child's support. We therefore overrule *Miller* v. *Anderson* and *Hall* v. *Rosen* and hold, first, that a man who marries a woman while she is pregnant is presumed to be the natural father of any child born from such pregnancy and, second, that this presumption of paternity can be rebutted by clear and convincing evidence.

Based on all of the foregoing, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

53

CELEBREZZE, C.J., FORD, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

FORD, J., of the Eleventh Appellate District, sitting for LOCHER, J.