HULETT ET AL., APPELLANTS, *v.* HULETT, APPELLEE.

[Cite as Hulett *v.* Hulett (1989), 45 Ohio St. 3d 288.]

(No. 88-98—Submitted February 21, 1989—Decided September 20, 1989.)

*Moots, Cope & Kizer Co., L.P.A., Jon M. Cope, Carol Ann Fey, Delligatti, Hollenbaugh, Briscoe & Milless* and *Charles K. Milless,* for appellants.

*James M. McCord,* for appellee.

SWEENEY, J. The instant appeal concerns the admissibility of the results of genetic tests, including Human Leukocyte Antigen ("HLA") tests, authorized by R.C. 3111.09 and 3111.10, to overcome the presumption of paternity conferred upon the husband of the child's natural mother pursuant to R.C. 3111.03(A)(1).

R.C. Chapter 3111 governs the relationship between parent and child and provides mechanisms by which such relationship may be established. R.C. 3111.02 provides in relevant part that "* * * [t]he parent and child relationship between a child and the natural father of the child may be established pursuant to sections 3111.01 to 3111.19 of the Revised Code. * * *" Moreover, R.C. 3111.04 (A) identifies the parties authorized to institute an action to establish the aforementioned relationship:

"An action to determine the existence or non-existence of the father and child relationship may be brought by the child or child's personal representative, the child's mother or personal representative, a man alleged or alleging himself to be the child's father, or the alleged father's personal representative."

In *State, ex rel. Walker,* v. *Clark* (1944), 144 Ohio St. 305, 29 O.O. 450, 58 N.E. 2d 773, this court recognized that the statutory presumption of paternity in the husband of the natural mother at the time of conception is rebuttable and that, under the predecessor statute to R.C. 3111.04(A), the natural mother was authorized to challenge such presumption. The *Walker* court overruled paragraph two of the syllabus of its previous decision in *Powell* v. *State, ex rel. Fowler* (1911), 84 Ohio St. 165, 95 N.E. 660, which limited evidence sufficient to overcome the presumption to that which seeks to establish that the husband lacked the ability or opportunity to engage in procreative sexual relations with the natural mother. In contrast, *Walker* merely required that there be clear and convincing evidence that procreative sexual relations did not occur between the natural mother and her husband irrespective of the opportunity to do so.

As mentioned previously, the presumption is currently found in R.C. 3111.03(A)(1). It provides as follows:

"A man is presumed to be the natural father of a child under any of the following circumstances:

"(1) The man and the child's mother are or have been married to each other, and the child is born during the marriage or is born within three hundred days after the marriage is terminated by death, annulment, divorce, or dissolution or after the man and the child's mother separate pursuant to a separation agreement."

In *Joseph* v. *Alexander* (1984), 12 Ohio St. 3d 88, 12 OBR 77, 465 N.E. 2d 448, this court expressly held that the foregoing presumption could be challenged by an alleged biological father in an action brought pursuant to R.C. 3111.04(A). In rejecting the holdings of the courts below that an action seeking to rebut the presumption of paternity in the husband of the natural mother is contrary to public policy, we observed:

"When the legislature enacted sweeping changes in R.C. Chapter 3111, it patently adopted the case law of *State, ex rel. Walker,* v. *Clark, supra,* as statutory law. This legislation, not being in conflict with any constitutional provisions, establishes the applicable rule of public policy. The courts are bound. * * *" *Joseph* v.

*Alexander, supra,* at 89, 12 OBR at 78, 465 N.E. 2d at 449.

Accordingly, in *Joseph* we adopted verbatim the following law announced in *State, ex rel. Walker,* v. *Clark, supra:*

"While every child conceived in lawful wedlock is presumed legitimate, such presumption is not conclusive and may be rebutted by clear and convincing evidence that there were no sexual relations between husband and wife during the time in which the child must have been conceived." *Joseph* v. *Alexander, supra,* at syllabus.

We therefore hold that pursuant to R.C. 3111.03(A)(1), a man is presumed to be the natural father of a child where the man and the child's mother are or have been married to each other and the child is born during the marriage. However, such presumption may be rebutted by clear and convincing evidence to the contrary.

Appellee seizes on the syllabus language of *Joseph* v. *Alexander, supra,* and urges that our decision therein was intended to allow rebuttal of the presumption *only* in the instance where "* * * there were no sexual relations between husband and wife during the time in which the child must have been conceived." It is therefore the view of appellee that evidence consisting of genetic test results is inadmissible to rebut the presumption. This argument must be rejected. As an initial matter, the plain language of the syllabus does not convey that evidence showing a lack of sexual relations between the husband and wife is the exclusive method by which the presumption may be overcome. Secondly, *Joseph* v. *Alexander* simply reversed the court of appeals' judgment upholding the trial court's dismissal of the complaint. It is silent as to the state of the evidence or the type of evidence upon which the challenge to the presumption was predicated.[1] Thirdly, the *Joseph* court had before it the entire text of R.C. Chapter 3111 as enacted by Am. Sub. H.B. No. 245 on June 29, 1982. (139 Ohio Laws, Part I, 2170.) Included therein was the following version of R.C. 3111.10, which provided:

*"In an action brought under this chapter,* evidence relating to paternity may include:

"(A) Evidence of sexual intercourse between the mother and alleged father at any possible time of conception;

"(B) An expert's opinion concerning the statistical probability of the alleged father's paternity, which opinion is based upon the duration of the mother's pregnancy;

"(C) Genetic test results, weighted in accordance with evidence, if available, of the statistical probability of the alleged father's paternity;

"(D) Medical evidence relating to the alleged father's paternity of the child based on tests performed by experts. If a man has been identified as a possible father of the child, the court may, and upon the request of a party shall, require the child, the mother, and the man to submit to appropriate tests. Any fees charged for the tests shall be paid by the party that requests

---

[1] A review of the brief of the successful appellant in *Joseph* reveals, however, that all the evidentiary bases for establishing paternity contained in R.C. 3111.10 were advanced as proper methods by which to challenge the presumption set forth in R.C. 3111.03(A)(1). Brief of appellant at 26-27, *Joseph* v. *Alexander, supra,* contained in 2375 Ohio Supreme Court Briefs & Records, 3d Series, case No. 83-1464.

them unless the court orders the fees taxed as costs in the action.

"(E) All other evidence relevant to the issue of paternity of the child."[2] (Emphasis added.)

This section clearly encompasses both evidence establishing lack of sexual access by the presumed father as well as medical evidence. It is highly unlikely that the *Joseph* court would countenance the use of one form of competent evidence enumerated in R.C. 3111.10 to the exclusion of other competent evidence identified therein.

Finally, this court in *Joseph* was undoubtedly aware of its prior decision in *Owens* v. *Bell* (1983), 6 Ohio St. 3d 46, 6 OBR 65, 451 N.E. 2d 241, wherein the admissibility of HLA tests was acknowledged despite the absence of express statutory authority for their employment in paternity proceedings. Paragraph two of the syllabus in *Owens* v. *Bell, supra,* provides that:

"HLA tests constitute relevant evidence to establish the probability of paternity. This evidence would have been admissible for that purpose even prior to the enactment of R.C. 3111.09 and 3111.10, which now permit the admission of HLA test results to establish the probability of paternity."

R.C. 3111.09 governs the procedure by which HLA and other genetic tests are used by the trial court in arriving at a determination of paternity. It provides in relevant part:

"(A) In any action instituted under sections 3111.01 to 3111.19 of the Revised Code, the court may, upon its own motion or upon the motion of any party to the action that the court determines is not being made to unduly delay the action, order the child's mother, the child, the alleged father, and any other person who is a defendant in the action to submit to genetic tests.

"* * *

"(D) If the court finds that the conclusions of all the examiners are that the alleged father is not the father of the child, the court shall enter judgment that the alleged father is not the father of the child. If the examiners disagree in their findings or conclusions, the court or jury shall determine the father of the child based upon all the evidence.

"(E) As used in sections 3111.01 to 3111.19 of the Revised Code, 'genetic tests' means a series of serological tests, that are either immunological or biochemical or both immunological and biochemical in nature, and that are specifically selected because of their known genetic transmittance. 'Genetic tests' include, but are not limited to, tests for the presence or absence of the common blood group antigens, the red blood cell antigens, human lymphocyte antigens, serum enzymes, and serum proteins."

Consequently, R.C. 3111.02, 3111. 03, 3111.04, 3111.09 and 3111.10 are *in pari materia,* and must be construed together. The genetic tests authorized by R.C. 3111.10 and described in R.C. 3111.09 may be employed to overcome the presumption of paternity contained in R.C. 3111.03(A)(1).

---

[2] This section was subsequently amended on September 24, 1986, solely to make it compatible with the contemporaneous amendment of R.C. 3111.03(B) and enactment of R.C. 3111.30 to 3111.38. These latter sections govern pregnancies obtained through artificial insemination and render the presumption of paternity in the husband conclusive where conception was obtained in this fashion. The substance of R.C. 3111.10 remained completely unchanged.

While appellee asserts that such tests are to be employed only in paternity proceedings other than those seeking to rebut the presumption contained in R.C. 3111.03(A)(1), a review of the code sections relevant to the instant appeal fails to disclose any such intent on the part of the General Assembly. R.C. 3111.02, 3111.09 and 3111.10 specifically refer to actions brought pursuant to R.C. 3111.01 through 3111.19.

Clearly, an action to establish paternity brought pursuant to R.C. 3111.02 which seeks to rebut the presumption created by R.C. 3111.03 is one encompassed within the terms of the preceding reference. If the legislature had intended to exclude the admission of genetic evidence under such circumstances it certainly could have made separate provision therefor.[3] In a similar context, the General Assembly was not reticent about its desire to render the presumptions contained in R.C. 3111.03(A)(1) and (2) conclusive with respect to conception obtained by means of artificial insemination.[4] It is therefore our further conclusion that clear and convincing evidence sufficient to overcome the presumption of paternity contained in R.C. 3111.03(A)(1) may be adduced through any or all of the enumerated methods prescribed by R.C. 3111.10, including the submission of genetic test results.

We are not unmindful of the concerns expressed in *Hall* v. *Rosen* (1977), 50 Ohio St. 2d 135, 140, 4 O.O. 3d 336, 339, 363 N.E. 2d 725, 728, and echoed in the opinion of the court of ap-

---

[3] The state of California has, in fact, specifically addressed this issue. Cal. Evid. Code (Supp. 1989), Section 621 provides:

"(a)  Except as provided in subdivision (b), the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage.

"(b)  Notwithstanding the provisions of subdivision (a), if the court finds that the conclusions of all the experts, as disclosed by the evidence based upon blood tests performed pursuant to Chapter 2 (commencing with Section 890) of Division 7 are that the husband is not the father of the child, the question of paternity of the husband shall be resolved accordingly.

"(c)  The notice of motion for blood tests under subdivision (b) may be raised by the husband not later than two years from the child's date of birth.

"(d)  The notice of motion for blood tests under subdivision (b) may be raised by the mother of the child not later than two years from the child's date of birth if the child's biological father has filed an affidavit with the court acknowledging paternity of the child.

"(e)  The provisions of subdivision (b) shall not apply to any case coming within the provisions of Section 7005 of the Civil Code or to any case in which the wife, with the consent of the husband, conceived by means of a surgical procedure.

"(f)  The notice of motion for the blood tests pursuant to subdivision (b) shall be supported by a declaration under oath submitted by the moving party stating the factual basis for placing the issue of paternity before the court. This requirement shall not apply to any case pending before the court on September 30, 1980.

"(g)  The provisions of subdivision (b) shall not apply to any case which has reached final judgment of paternity on September 30, 1980."

In *Michael H.* v. *Gerald D.* (1989), 491 U.S. ___, 105 L. Ed. 2d 91, 109 S. Ct. 2333, the United States Supreme Court upheld the application of the foregoing presumption to an action brought by the biological father of the child. The court determined that operation of the conclusive presumption was not a violation of the due process rights of the father or of the child under the federal Constitution.

[4] See R.C. 3111.03(B), 3111.37(A) and footnote 2, *supra.*

peals below. Such concerns include the potential for "father shopping" by the natural mother and the negative impact that the prosecution of claims years after the birth of the child may have on the pre-existing family structure. However, the "public policy" considerations which underscored *Hall* v. *Rosen, supra,* have since been both judicially and legislatively rejected. In *Johnson* v. *Adams* (1985), 18 Ohio St. 3d 48, 51, 18 OBR 83, 86, 479 N.E. 2d 866, 869, this court, in the course of overruling *Hall* v. *Rosen,* specifically acknowledged the relevance and utility of employing genetic tests to rebut the presumption of paternity in a man who marries a pregnant woman:

"If, *arguendo,* 'father shopping' *was* a substantial risk to be borne upon rejection of the conclusive presumption of paternity, this risk certainly has been minimized with the medical and legal acceptance of Human Leukocyte Antigen ('HLA') tests (which are basically genetic comparison examinations). In the second paragraph of the syllabus in *Owens* v. *Bell* (1983), 6 Ohio St. 3d 46, we held that 'HLA tests constitute relevant evidence to establish the probability of paternity.' Because these tests, when used in concert with traditional blood grouping tests, raise the probability of excluding non-fathers to at least ninety percent, there is little incentive for a mother to bring a paternity action unless she is relatively certain of the identity of her child's father. Additionally, the accuracy of the HLA-blood-grouping test combination dramatically reduces the possibility that 'stale' evidence might form the basis for judgment in a paternity action." (Emphasis *sic.*)

In *Johnson,* this court declined to apply the provisions of the Uniform Parentage Act to a judgment obtained prior to its effective date in Ohio. Nevertheless, we implicitly recognized

that public policy in this area would henceforth be ascertained by reference to the clear statutory language chosen by the General Assembly and incorporated within R.C. Chapter 3111. *Id.* at 52, 18 OBR at 86, 479 N.E. 2d at 869-870. See, also, *Joseph* v. *Alexander, supra,* at 89, 12 OBR at 78, 465 N.E. 2d at 449.

Moreover, it is difficult to perceive that an attempt to rebut the presumption through the use of genetic tests would be any more disruptive to a pre-existing family unit than resort to evidence which has been previously viewed as admissible to accomplish the identical result. Thus, in *Powell* v. *State, ex rel. Fowler, supra,* paragraphs one and two of the syllabus provide:

"Every child begotten in lawful wedlock is presumed in law to be legitimate.

"Before such child can be adjudged a bastard the proof must be clear, certain and conclusive, either *that the husband had no powers of procreation,* or the circumstances were such as to render it impossible that he could be the father of the child." (Emphasis added.)

Clearly, in the case of sterility on the part of the husband, knowledge of the condition and its concomitant bearing on his paternity may arise years after the birth of the child. Accordingly, under the view advanced by appellee, such concerns as were expressed in *Hall* v. *Rosen* would be relevant only when genetic tests are sought to be admitted as evidence. In contrast, evidence that the husband lacked the powers of procreation would continue to be competent and admissible for the purpose of challenging the presumption. There is no basis in law or reason for adopting such a distinction.

In any event, courts retain the

equitable authority to bar such actions where the party instituting suit has failed to expeditiously assert the right to challenge the presumption of paternity and such dilatory behavior results in prejudice to the defendant. This authority exists even when the statute of limitations for bringing the action has not expired. Thus, in the syllabus to *Wright* v. *Oliver* (1988), 35 Ohio St. 3d 10, 517 N.E. 2d 883, we observed:

"Laches may be applicable in parentage actions filed prior to the expiration of the statute of limitations, but only if the defendant can show material prejudice. (*Smith* v. *Smith* [1959], 168 Ohio St. 447, 7 O.O. 2d 276, 156 N.E. 2d 113; *Thirty-Four Corp.* v. *Sixty-Seven Corp.* [1984], 15 Ohio St. 3d 350, 15 OBR 472, 474 N.E. 2d 295; *Connin* v. *Bailey* [1984], 15 Ohio St. 3d 34, 15 OBR 134, 472 N.E. 2d 328; *Kinney* v. *Mathias* [1984], 10 Ohio St. 3d 72, 10 OBR 361, 461 N.E. 2d 901, followed.)"

We therefore reverse the judgment of the court of appeals and remand the cause to the trial court for proceedings not inconsistent with this opinion.

*Judgment reversed and cause remanded.*

MOYER, C.J., HOLMES and DOUGLAS, JJ., concur.

WRIGHT, H. BROWN and RESNICK, JJ., concur in judgment.

H. BROWN, J., concurring. I concur because the result reached by the majority appears to be mandated by the Ohio Parentage Act. However, I am disturbed by the consequences of determining the rights and obligations of fatherhood based solely upon genetic testing. By canonizing genetic tests as the measure of the father-child relationship, the legislature (and the decision we reach today) have supplanted a long and well-established body of common law. This common law is articulated in the opinion of the court of appeals in reaching its unanimous decision, which we have decided to reverse. The common law accorded a strong presumption of legitimacy to children born in wedlock. This presumption is rooted in the interest of stabilizing family relationships.

As the majority notes, the Ohio legislation (when read *in pari materia*) gives precedence to genetic testing over the presumption of legitimacy previously given to children born in wedlock. The source of my disturbance can be traced to omissions in the legislation which replaces the common-law presumptions. Today's decision opens the way to unacceptable results unless the General Assembly amends the statutory scheme it has created.

At the core of my concern are two failures. First, the statutes with which we must work do not adequately identify the elements of fatherhood. A father-child relationship encompasses more (and greater) considerations than a determination of whose genes the child carries. Sociological and psychological components should be considered. The laws governing adoptions have acknowledged that parentage is comprised of a totality of factors, the least significant of which is genetics. Second, there is a need to separate issues of paternity from issues of fatherhood. The present statutory scheme blurs these issues and lumps them into one pot. To understand the problems, it is necessary to look at the impact of Ohio statutory law, as we have interpreted it today, on specific situations.

For example, a husband, in the process of divorce, may seek to

repudiate his obligation to support a child by declaring that he is not the biological father.[5] The court may order parentage proceedings to determine the truth of the allegation, in accordance with R.C. Chapter 3111. If the husband is found not to be the father of the child, he will be relieved of any obligation of support. Such an action presumably can occur until the child becomes an adult and parental support is no longer legally required.[6] Severing a long-term relationship between a father and a child in this manner would be devastating to any child and may leave a child destitute.

A second, equally odious result can occur. A mother or an alleged father can destroy an existing relationship between the marital father and his child at any time before the child turns twenty-three years old, by successfully challenging the child's paternity. The bond between the father and child or length of time that the mother or alleged father have suspected or known the truth about the child's parentage is rendered irrelevant where genetics is the sole test.

The General Assembly should quickly act to amend the law to close the loopholes which permit unintended and unconscionable results. Many states have already done so.

The Uniform Parentage Act ("UPA") and a majority of states which have adopted the UPA place a time limit upon when persons (other than the child) may bring an action to determine the existence or nonexistence of the father and child relationship when there is a presumed father by reason of his marriage to the mother. The UPA allows such an action to be brought within "* * * a reasonable time after obtaining knowledge of relevant facts, but in no event later than [five] years after the child's birth." Uniform Parentage Act (1973), Section 6(a)(2). A majority of the seventeen states which have adopted the UPA include a time limit which restricts when such actions can be brought to a period ending shortly after birth.[7]

The advantage of these statutory provisions is that they (in varying degrees) force parentage determina-

---

[5] R.C. 3115.24 permits one who owes a duty of support to assert as a defense that he is not the father of the child for whom support is sought.

[6] In Ohio, an action to determine the existence or nonexistence of a father and child relationship may be brought until the child attains the age of twenty-three, pursuant to R.C. 3111.05. While this provision protects the child's right to bring an action in the child's own name until five years after reaching the age of majority, it also allows (unless corrected) a father to abandon the child on the basis of genetic testing.

[7] The states which have a time limit restricting such actions to a period ending shortly after birth are:
Alabama (Ala. Code [1975], Section

26-17-6[a]: "* * * [W]ithin five years of the birth of said child for the purpose of declaring the existence of the father and child relationship * * *."); California (West's Ann. Cal. Civ. Code, Section 7006[a][2]: "For the purpose of declaring the nonexistence of the father and child relationship * * * only if the action is brought within a reasonable time after obtaining knowledge of relevant facts." California also precludes a husband from serving notice of a motion for blood tests later than two years after a child's birth, and permits a mother to serve notice of a motion for blood tests not later than two years after a child's birth only if the child's biological father has filed an affidavit with the court acknowledging the child's paternity. West's Ann. Cal. Evid. Code [Supp. 1989], Sections 621[c] and [d]); Colorado (Colo. Rev. Stat., Section 19-4-

tions to be made before a long-term relationship is established between the presumed father and the child. The majority opinion leaves open the possibility of some judicial limitation (on the time for bringing a parentage action) under the doctrine of laches. I

support that concept. However, this is an area where legislation is preferable to judicial law-making. Specific and clear guidelines are needed.

WRIGHT and RESNICK, JJ., concur in the foregoing opinion.

---

107[1][b]: "For the purpose of declaring the nonexistence of the father and child relationship * * * only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five years after the child's birth."); Hawaii (Hawaii Rev. Stat., Section 584-6[a][2]: "* * * [F]or the purpose of declaring the existence or nonexistence of the father and child relationship within * * * three years after the child's birth."); Illinois (Smith-Hurd Ill. Ann. Stat. Chapter 40, Paragraph 2508, Section 8[a][2]: "An action brought on behalf of any person other than the child shall be barred if brought later than 2 years after the birth of the child." Section 8[a][3]: "An action to declare the non-existence of the parent and child relationship shall be barred if brought later than 2 years after the petitioner obtains knowledge of relevant facts."); Minnesota (Minn. Stat. Ann., Section 257.57, Subdivision 1[b]: "For the purpose of declaring the nonexistence of the father and child relationship * * * only if the action is brought within a reasonable time after the person bringing the action has obtained knowledge of relevant facts, but in no event later than three years after the child's birth."); Missouri (Vernon's Ann. Mo. Stat., Section 210.826, Subsection 1, Subdivision [2]: "For the purpose of declaring the nonexistence of the father and child relationship * * * only if the action is brought within a reasonable time after ob-

taining knowledge of relevant facts, but in no event later than five years after the child's birth."); Montana (Mont. Code Ann., Section 40-6-108[1][b]: "[F]or the purpose of declaring the nonexistence of the father and child relationship * * * only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but not later than 5 years after the child's birth."); North Dakota (N.D. Cent. Code, Section 14-17-05, Subsection 1, Subdivision b: "For the purpose of declaring the nonexistence of the father and child relationship * * * only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five years after the child's birth."); Rhode Island (has no statute which specifically addresses actions brought when a child has a presumed father. However, R.I. Gen. Laws [1956], Section 15-8-6 applies to actions brought when a child has no presumed father. It states in part: "An action to determine the existence of the father and child relationship as to a child who has no presumed father * * * may not be brought later than four (4) years after the birth of the child. * * *"); Wyoming (Wyo. Stat. Ann., Section 14-2-104[a][ii]: "For the purpose of declaring the nonexistence of the father and child relationship * * * only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five (5) years after the child's birth.").