61 S.W.3d 481 (2001)
In the Interest of T.S.S., a Child.
No. 04-00-00431-CV.
Court of Appeals of Texas, San Antonio.
June 20, 2001.
Dissenting Opinion on Overruling of Rehearing October 24, 2001.
*482 Jerry N. Dennard, Reginald E. Mullins, Law Offices of Reginald Mullins, San Antonio, for Appellant.
Yvonne J. Trevino, Law Offices of Yvonne J. Trevino, James E. Monnig (Ad Litem), San Antonio, for Appellee.
Sitting: ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice, and KAREN ANGELINI, Justice.
Dissenting Opinion on Overruling of Rehearing En Banc October 24, 2001.

OPINION
Opinion by: ALMA L. LÓPEZ, Justice.
This appeal of a summary judgment concerns a petition for voluntary termination of parental rights, filed by appellant, Franklin Simmons, alleging that he is not the biological father of T.S.S., born during his marriage to Tamara Simmons Hessler. We affirm the summary judgment.

Factual and Procedural Background
Simmons and Hessler were divorced in 1989. The decree of divorce, approved by the parties, found them to be T.S.S.'s parents, a child born of the marriage. The parents were appointed joint managing conservators and Simmons was ordered to pay child support and was granted visitation rights. In January of 1999, Hessler informed Simmons that she would seek an increase in the $300 a month support payment, since their son, now 13, had increased needs. On September 16, 1999, Simmons filed a petition to modify, seeking to change the primary residence of the child to his home and to terminate his obligation to make child support payments to the mother. Hessler agreed to the motion and an order was entered accordingly.
While T.S.S. was living with him, Simmons arranged for tests for him and T.S.S. *483 and obtained a DNA report that he claims proves that he is not the biological father of T.S.S. He requested that Hessler take T.S.S. back, which she did and subsequently filed her petition to modify, seeking to reinstate Simmons' child support obligation and to return primary residency of the child to her home. On November 23, 1999, Simmons filed a plea in abatement and a petition to terminate the parent-child relationship, seeking to voluntarily terminate his parental rights to T.S.S. because he is not the biological father and that the prior adjudication of parentage in the decree of divorce resulted from fraud. Simmons further alleged that once he learned this, his attitude toward T.S.S. changed to such an extent that it is not in the child's best interest to continue the parent-child relationship.
Hessler answered with a general denial and raised as affirmative defenses that this action was barred by the doctrines of res judicata and collateral estoppel. Following discovery, Hessler moved for summary judgment on these defenses. Simmons objected to Hessler's summary judgment evidence and filed a response supported by evidence. Visiting Judge Solomon Casseb, Jr. conducted a hearing on May 16, 2000, and granted the summary judgment on Hessler's affirmative defenses on June 12, 2000.

Standard of Review
Appellate review of a summary judgment is conducted de novo. American Broadcasting Cos. v. Gill, 6 S.W.3d 19, 27 (Tex.App.-San Antonio 1999, pet. denied). In doing so, we apply the following standards: (1) The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. (2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. (3) Every reasonable inference must be indulged in favor of the non-movant and doubts resolved in its favor. See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). The dispositive question for the courts in each instance is not whether the summary judgment proof raises fact issues, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact. See Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex.1970).
Simmons assigns one broad issue whether the trial court erred in granting summary judgment. See Malooly Brothers, Inc. v. Napier, 461 S.W.2d 119 (Tex. 1970). The crux of his argument is that the court erred in failing to address the best interest of the child in reaching its judgment. Simmons asserts that the doctrines of res judicata and collateral estoppel should not apply because the "best interest" issue concerning Simmons' changed attitude toward the child was never litigated. That issue, he argues, is to be determined by the trier of fact, precluding summary judgment.

Voluntary Termination
Simmons seeks to terminate his parental responsibilities under a rarely-used provision[1] of the Family Code, Section 161.005(a), which provides:
A parent may file a suit for termination of the petitioner's parent-child relationship. The court may order termination *484 if termination is in the best interest of the child.
Tex. Fam.Code § 161.005(a) (Vernon 1996). Although this provision was enacted in 1973[2], only two reported cases briefly discuss its implications. See Nichols v. Nichols, 803 S.W.2d 484 (Tex.App.-El Paso 1991, no writ); Linan v. Linan, 632 S.W.2d 155 (Tex.App.-Corpus Christi 1982, no writ). Under circumstances similar to this case, Carlene and Scott Nichols obtained an agreed decree of divorce in 1986. In the decree, the court found that the parties were the parents of a child, named the mother managing conservator, the father possessory conservator, and set child support payments. No appeal of this decree was taken. Three years later, Scott filed a petition to terminate his parent-child relationship. He alleged that he was not the biological father, that another man was, and that voluntary termination of the current relationship was in the best interest of the child. Nichols, 803 S.W.2d at 484-85. Here the similarity to this case ends. Although Carlene had been served, she did not appear at the trial. The trial court failed to appoint an ad litem and granted Scott a default judgment. The court of appeals reversed, finding the failure to appoint an ad litem to represent the best interest of the child to be fundamental error. Id. at 485.
The El Paso court of appeals construed this provision as permitting a parent to petition the court to terminate its own rights and responsibilities in the parent-child relationship, "but the petition is to be granted only if the courts finds that the termination is in the best interest of the child." Id. (emphasis added). In dicta, the court recognized that a child under such circumstances might want to raise defenses "such as res judicata or collateral attack on the prior divorce decree." Id. at 486. Although the concept is not fully developed in Nichols, the opinion implies that while "best interest" analysis is required to grant a termination, other legal doctrines, such as res judicata and collateral estoppel, may operate to bar or defeat termination.
In the Linan case, the Linans had married, adopted a child, and ultimately divorced. The father was in arrears on his child support payments when he filed a motion to terminate parental rights. See Linan, 632 S.W.2d at 155-56. The motion to voluntarily terminate parental rights was heard at the same time as the mother's motion for contempt concerning failure to make timely support payments. The trial court denied the motion for termination, found the father in contempt, but reduced his payments by $10.00 a week. Linan appealed the denial of termination raising as error an abuse of discretion and factual sufficiency. Linan claimed it was in his daughter's best interest to terminate because the mother prevented him from seeing his daughter in accordance with the visitation rights afforded him in the divorce decree. He also testified to his financial condition and his health. Under cross-examination, Linan also admitted that a termination would leave his daughter without a father and without financial support. Id. at 157 (op. on rehearing). The appellate court held that a refusal to follow the decree on visitation rights was not in itself justification for termination. Id. at 156. The issue of res judicata was not raised.
The preclusive effect of paternity findings in divorce decrees is becoming a common issue in matters raised by former husbands, usually as a defense to child *485 support litigation or by bringing a paternity suit. The vast majority of states hold that the divorce decree bars the former husband from relitigating the paternity issue.[3] In a well-reasoned opinion, the Ohio Court of Appeals, reviewing circumstances similar to those presented here, discussed the effect of declaring "static a state of facts that reliable scientific evidence contradicts." Leguillon v. Leguillon, 124 Ohio App.3d 757, 707 N.E.2d 571 (1998)(quoting Strack v. Pelton, 70 Ohio St.3d 172, 637 N.E.2d 914 (1994)).[4] The Strack decision placed the goal of "finality above perfection in the hierarchy of values," finding finality to be particularly compelling where determinations of parentage, visitation, and support of a minor child are involved. Strack, 637 N.E.2d at 916. Like the Leguillon court, Texas courts are not free to adopt a rule that an adjudicated father may be relieved of his support obligations anytime he comes forward with DNA evidence post-decree that tends to exclude him as the biological father. This argument is all the more compelling where the adjudicated father has had reason to suspect paternity from the outset. Accord Leguillon, 707 N.E.2d at 577 & n. 5.

Collateral Estoppel
To bar an action on the basis of collateral estoppel, the movant must prove the following elements: (1) the same fact issue sought to be litigated in the second suit; (2) the fact issue was essential to the judgment in the first suit; and (3) the parties were cast as adversaries in the first suit. See Johnson & Higgins, Inc. v. Kenneco Energy, 962 S.W.2d 507, 521 (Tex.1998). A finding of fact by the trial *486 court in a divorce judgment that a child was born to the marriage of the parties is equivalent to a finding that the husband is the father of the child. See Thompson v. Thompson, 572 S.W.2d 761, 764-65 (Tex. Civ.App.-Tyler 1967, no writ). The doctrine of collateral estoppel bars relitigation of that fact issue in a subsequent suit. See id.; Walters v. Walters, 565 S.W.2d 586, 586-87 (Tex.Civ.App.-Austin 1978, no writ); see also Dreyer v. Greene, 809 S.W.2d 262, 263 (Tex.App.-Houston [1st Dist.] 1991), aff'd, 871 S.W.2d 697, 698 (Tex.1993)(wife barred by statutory res judicata from asserting parentage contrary to trial court's findings in her divorce decree); Byrd v. Travelers Ins. Co., 275 S.W.2d 861, 863 (Tex.App.-San Antonio 1955, writ ref'd n.r.e.)(res judicata barred parents of deceased worker from attacking a divorce decree finding that their son fathered a son during marriage); Espree v. Guillory, 753 S.W.2d 722, 724 (Tex.App.-Houston [1st Dist.] 1988, no pet.) (third party's paternity action barred by finding in divorce decree that H & W were parents of child); Villanueva v. Office of the Atty. Gen., 935 S.W.2d 953, 956 (Tex. App.-San Antonio 1996, writ denied)(nonparentage not defense to Uniform Interstate Family Support Act action if party's parentage previously determined); Tex. Fam.Code Ann. § 159.315 (same).
These holdings in the face of DNA evidence contrast with the situation where parentage was not clearly determined in a prior decree. In Attorney General of Texas v. Duncan, the decree recited that the two children were born to the wife during the marriage. There was no finding in the decree that the husband was the father of the children. A statement entered into evidence in the divorce proceeding said that the husband and wife had lived apart for more than three years, and that she had not seen him since 1978. The children were born in 1981 and 1982. Ten years later, the Attorney General sued Duncan to establish paternity and recover retroactive child support and health care expenses. Duncan moved for summary judgment on several grounds, including res judicata. See Attorney Gen. of Texas v. Duncan, 929 S.W.2d 567, 570 (Tex. App.-Fort Worth 1996, no writ). The court of appeals held that the principles of res judicata did not bar litigation of that issue. "The decree contained no findings of paternity, did not address visitation or support, did not sever any parent-child relationship, or state that the children were born to the marriage." Under the circumstances, the court of appeals concluded that the issue of paternity had simply not been litigated. Id. at 572.
Hessler supported her motion for summary judgment with a copy of the decree of divorce, evidencing that Simmons had been adjudicated the father of T.S.S. in 1989. Further support was offered in the order Simmons obtained in 1999, which modified the child's residency to Simmons' home. Simmons and Hessler were adversaries in both suits. Moreover, Hessler's uncontroverted affidavit established that Simmons was aware of the possibility that he was not the biological father at the time they married. A few months before she was due to deliver he forced her to move to a home for unwed mothers and permitted her to return to their home after the birth of the child. At the time of the divorce, when the child was two years old, Simmons sought sole custody. In spite of this history, Simmons never raised the issue of paternity during the divorce proceedings. Simmons provided emotional and financial support to the child for 13 years, until Hessler informed him of her intention to seek an increase in payments due to his increased earning capacity and the child's increased needs.
*487 Although Simmons casts Hessler as a perpetrator of fraud, he had ample notice and opportunity to contest paternity dating back to 1989, and did not. In response to the motion for summary judgment, he attached a lab report purporting to conclude that DNA excluded him as the biological father of T.S.S. However, the lab report does not meet the requirements of testing to be probative on the issue of paternity.[5]
Simmons filed his own affidavit which related that upon learning of this development, "not only did my attitude toward my relationship with [T.S.S.] change, but my life also drastically changed because of this information.... I am not emotionally or morally capable of carrying on the charade that his mother has created for the child." Even if the DNA evidence noted met the standards of relevance and reliability, see Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 721 (Tex.1998), sufficient to raise a material fact issue as to paternity, the report is not sufficient to raise an issue as to a mother's alleged fraud in order to defeat the application of estoppel under these circumstances. Accord Serrano v. Serrano, 2000 WL 1862098 (Conn.Super.Nov.27, 2000)(DNA evidence does not prove mother knowingly made a misstatement of paternity).
In the present action, Simmons seeks to terminate his future responsibilities to a child he has raised for fourteen years because he says he now has proof that he is not the biological father and this has destroyed his paternal feelings toward the child. This was an issue that could have been litigated in 1989 at the time of the divorce. He had already demonstrated that he did not believe he was the biological father at that time. Yet, he initially challenged custody, and eventually agreed to a finding that determined his parental rights and responsibilities. Now he has responded to a motion to modify child support with his own independent action to terminate the parent-child relationship. *488 The basis of the action is alleged DNA evidence that he is not the biological father. That evidence could have been obtained in 1989 before the divorce decree was entered. Simmons attempts to do an end-run around a final decree by filing this action, and he seeks to relitigate a fact issue that was essential to the judgment in the prior decree.

Conclusion
Simmons' contention that it is in the best interest of the child for his parent-child relationship to be terminated is based solely on his claim that he is not the biological father. That being the case, and because the issue of parentage is precluded by collateral estoppel, there is no other basis upon which to support a best-interest determination. Appellant's issue is overruled, and the judgment of the trial court is affirmed.

DISSENTING OPINION ON DENIAL OF REHEARING EN BANC
Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, ALMA L. LÓPEZ, CATHERINE STONE, PAUL W. GREEN, SARAH B. DUNCAN and KAREN ANGELINI, Justices.
Dissenting opinion by: SARAH B. DUNCAN, Justice, joined by Justice TOM RICKOFF.
I respectfully dissent to the denial of rehearing en banc. The panel holds Simmons' suit is barred by the doctrine of collateral estoppel, which precludes relitigation of previously-adjudicated issues of fact essential to a prior judgment. But Simmons' suit does not seek to relitigate the finding in the divorce decree establishing a parent-child relationship between him and T.S.S. Indeed, the statute under which Simmons suessection 161.005(a) of the Texas Family Codepresumes an existing parent-child relationship and provides for its termination if it is in the child's best interest. T.S.S.'s best interestthe only material issue in this case was not addressed by Hessler's motion for summary judgment. Accordingly, we should grant the motion for reconsideration en banc, reverse the trial court's summary judgment and remand the cause for further proceedings.

Factual and Procedural Background
Admitting he is T.S.S.'s adjudicated father as a result of an earlier divorce decree, Franklin R. Simmons filed a petition to terminate the parent-child relationship pursuant to section 161.005(a) of the Texas Family Code, which provides:
A parent may file a suit for termination of the petitioner's parent-child relationship. The court may order termination if termination is in the best interest of the child.
Tex. Fam.Code Ann. § 161.005(a) (Vernon 1996). In response, T.S.S.'s mother, Tamara K. Hessler answered and moved for summary judgment under Rule 166a(c), Tex.R. Civ. P., on two groundsestoppel and res judicata. Hessler's motion does not address whether termination of the parent-child relationship between Simmons and T.S.S. would be in T.S.S.'s best interest. The trial court granted Hessler's motion without stating a ground for its ruling. A panel of this court granted Hessler's motion without stating a ground for its ruling. A panel of this court affirmed, and Simmons moved for rehearing en banc.

Standard of Review
We review a summary judgment de novo. See Valores Corporativos, S.A. de C.V. v. McLane Co., 945 S.W.2d 160, 162 (Tex.App.-San Antonio 1997, writ denied). We will thus affirm a traditional summary judgment under Rule 166a(c) *489 only if the summary judgment evidence establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law on a ground set forth in the motion. See Tex.R. Civ. P. 166a(c).

DISCUSSION
As the panel opinion states, res judicata and collateral estoppel may bar an adjudicated father's attempt to relitigate his paternity in a later suit. See Espree v. Guillory, 753 S.W.2d 722, 724 (Tex.App.-Houston [1st Dist.] 1988, no writ). However, as Simmons states in his brief to this court, he "did not and does not seek to set aside the adjudication of parentage established by the [divorce decree]." Rather, he seeks to terminate what he admits is the parent-child relationship established by that decree. Under these circumstances, the doctrines of res judicata and collateral estoppel simply do not apply. The trial court thus erred in granting Hessler's motion for summary judgment. Therefore, we must reverse the trial court's judgment and remand the cause to that court for further proceedings.
NOTES
[1] In Texas, this provision is most commonly used when the birth mother wants to place her baby for adoption. See Robinson C. Ramsey, Termination of Parental Rights, 4 Texas Family Law Service, § 33.8 (6th ed.1997).
[2] Act of June 15, 1973, 63rd Leg., R.S., ch. 543, § 15.01, 1973 Tex. Gen. Laws 1411, 1426 (amended 1995)(current version at Tex. Fam.Code Ann. § 161.005(a) (Vernon 1996)).
[3] See Nadine E. Roddy, "The Preclusive Effect of Paternity Findings in Divorce Decrees," 10 Divorce Litig. 169 (Sept.1998) (citing decisions from the following states: Alabama, Colorado, Georgia, Illinois, Indiana, Iowa, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, New Jersey, New Mexico, Ohio, Pennsylvania, Virginia, Vermont, West Virginia, Washington, and Wyoming). But see Ex Parte Jenkins, 723 So.2d 649 (Ala.1998)(permitting reopening of final judgment of paternity based on scientific evidence that adjudged father not biological father, provided court first determines evidence to be scientifically valid and reliable, and noted that respondent may be entitled to relief under state equivalent of federal rule of procedure 60(b)(6) requiring petitioner to bring issue to court within reasonable time).
[4] Part of the conflict is the result of inadequate definitions of fatherhood. As Justice Herbert Brown discussed in his concurring opinion in Hulett v. Hulett, 45 Ohio St.3d 288, 544 N.E.2d 257 (1989):

A father-child relationship encompasses more (and greater) considerations than a determination of whose genes the child carries. Sociological and psychological components should be considered. The laws governing adoptions have acknowledged that parentage is comprised of a totality of factors, the least significant of which is genetics.... [T]here is a need to separate issues of paternity from issues of fatherhood. The present statutory scheme blurs these issues and lumps them into one pot.
Id. at 263. The Supreme Court of Maine agrees, pointing out the importance of recognizing the contributions of both the biological father and that of the presumed father:
Although DNA testing may provide a bright line for determining the biological relationship between a man and a child, it does not and cannot define the human relationship between a father and child. When a man has been newly determined to be the biological father of the child, the courts have a responsibility to assure that the child does not, without cause, lose the relationship with the person who has previously been acknowledged to be the father both in the law, through marriage, and in fact, through the development of the parental relationship over time. In this developing area of law, and in the absence of legislative action, many questions remain unanswered.
Stitham v. Henderson, 768 A.2d 598, 606 & n. 16 (Me.2001)(recognizing the ALI's concept of de facto parent and its attendant equitable parental rights).
[5] The family code contemplates that such evidence shall be structured by court order to test the mother, the alleged father, and the child. See Tex. Fam.Code Ann. § 160.102(a)(Vernon 1986). The order must require that such "tests exclude at least 99 per cent of the male population from the possibility of being the father of the child, except that the court shall permit the omission of any further testing if the testing has been conducted sufficiently to establish that an alleged father is not the father of the child...." Id. at § 160.103. The lab report Simmons attached to his response shows that the mother was not tested, that eleven alleles were compared on body samples taken from the child and the alleged father. An unknown lab technician's interpretation of the results notes that "four different genetic systems analyzed ... [for] the alleged father... failed to match the obligate paternal allele present in the child." The analyst concludes that Simmons is excluded as being the father of T.S.S. This report is accompanied by a standard business records affidavit sworn to by the custodian of records for the laboratory. There is no expert opinion affidavit to provide the necessary assurances of qualification, proper testing procedures, and interpretation of the results. See id. at § 160.104. Section 160.109 contemplates that such tests conducted in accordance with a court order or by agreement of the parties will meet the necessary reliability requirement. See id. at § 160.109(d). At least one other jurisdiction does not allow the results of an unauthorized DNA test to be admitted into evidence. See Brian B. v. Dionne B., 267 A.D.2d 188, 699 N.Y.S.2d 491, 492 (N.Y.App.Div.1999) (trial court properly declined to consider results of privately arranged genetic testing); Department of Social Services v. Joseph N., 159 Misc.2d 833, 606 N.Y.S.2d 962, 963 (N.Y.Fam.Ct.1993)(DNA testing not done by duly approved facility may not be considered by court). In addition to concerns for reliability, there are legitimate public policy concerns over privacy interests such as the dangers of unauthorized disclosure of genetic information and possible genetic discrimination by entities such as insurance companies and employers.