JOURNAL ENTRY AND OPINION
{¶ 1} This case arises from a paternity action filed by the mother of V.F.,[1] seeking support from the child's biological father. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} Appellant, Dr. H.N.H. ("father"), is the biological father of V.F., who was born March 3, 1994. At the time of her birth, V.F.'s mother, H.M.F. ("mother"), was married to J.F. ("husband") and remained so at the time of the within action. The parties agreed that husband would be listed on the child's birth certificate as the child's father and that appellant would not provide any care or support for the child. At all times, the parties have acknowledged that H.N.H. is the child's biological father. To date, appellant has provided no support nor had any contact with the child.
 {¶ 3} In 1994, appellee's husband attempted to adopt the child; however, a court denied the adoption because the husband was already the child's legal father due to his inclusion on the birth certificate. Appellant, however, executed a consent to adoption at the appellee's request and was unaware that the adoption was not completed.
 {¶ 4} Years later, appellee filed an administrative action with the Child Support Enforcement Agency ("CSEA") seeking child support from father. Mother stated that she waited to seek support until V.F. was of an age to understand and benefit from a relationship with father. On October 25, 2002, genetic testing confirmed that the child was father's, and a temporary support order was entered on April 30, 2003. The case was ultimately heard on January 29, 2004 before a magistrate in the Juvenile Court, who established the parent-child relationship between father and the child and ordered continuing child support. No determination as to allocation of parental rights was made at that time, and appellant was not found liable for past support. The magistrate's decision was adopted April 6, 2004, over the objections of appellant.
 {¶ 5} Appellant now appeals the trial court's determination with eight assignments of error.[2] However, pursuant to Civ.R. 53, appellant may only appeal the adoption by the trial court of the magistrate's findings of fact and conclusions of law to which he has objected. Upon review of the record, we find that appellant filed objections only with reference to assignments of error I and VIII; therefore, we decline to address appellant's remaining assignments of error.
 {¶ 6} When reviewing a matter concerning child support issues, the decision of the trial court will not be reversed absent an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144; Rock v.Cabral (1993), 67 Ohio St.3d 108, 112. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Clark (1994),71 Ohio St.3d 466, 470; State v. Moreland (1990), 50 Ohio St.3d 58, 61;State v. Adams (1980), 62 Ohio St.2d 151, 157. In order to find an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoffv. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256.
 {¶ 7} In his first assignment of error, appellant argues that the trial court erred in disestablishing the parent-child relationship between mother's husband and the child, establishing appellant as the child's legal father and ordering support payments. Pursuant to R.C.3111.05, an action to determine the existence or non-existence of the father-child relationship may not be brought later than five years after the child reaches the age of 18. Laches may be an equitable defense to a paternity action, but only if it is shown that the person for whose benefit the doctrine will operate has been materially prejudiced by an unreasonable and unexplained delay of the person asserting the claim.Seegert v. Zietlow (1994), 95 Ohio App.3d 451, 457, citing Wright v.Oliver (1988), 35 Ohio St.3d 10, 517 N.E.2d 883, syllabus; Ferree v.Sparks (1991), 77 Ohio App.3d 185, 601 N.E.2d 568; Connin v. Bailey
(1984), 15 Ohio St.3d 34, 472 N.E.2d 328; Smith v. Smith (1959),168 Ohio St. 447, 156 N.E.2d 113, paragraph three of the syllabus.
 {¶ 8} Parents are obligated to support their minor children, including illegitimate children. R.C. 3103.03(A); Brookbank v. Gray,74 Ohio St.3d 279, 1996-Ohio-135, 658 N.E.2d 724; Franklin v. Julian
(1972) 30 Ohio St.2d 228. Court-ordered support is for the benefit of the child rather than the custodial parent and, consequently, cannot be waived by the parents. Nelson v. Nelson (1989), 65 Ohio App.3d 800,804-805, 585 N.E.2d 502 citing Rhoades v. Rhoades (1974),40 Ohio App.2d 559, 321 N.E.2d 242; Smith v. Smith (1964),7 Ohio App.2d 4, 218 N.E.2d 473.
 {¶ 9} Despite the unfortunate circumstances surrounding this case, we find no abuse of discretion in the court's establishing the parent-child relationship between V.F. and appellant. The parties were aware at the time of the child's birth that appellant was the biological father of the child, which was confirmed by genetic testing. No action was ever taken by appellant to establish his rights as V.F.'s father. If, as appellant argues, his role in this family drama was merely that of "sperm donor," and nothing more, then the appropriate steps should have been taken by the parties at the time of the child's birth to name mother's husband as the child's legal father; for example, appellant could have signed the birth certificate and then consented to an adoption by the husband, thus permanently severing appellant's parental rights.
 {¶ 10} Further, appellant's reliance on Crago v. Kinzie (2000)106 Ohio Misc. 51, is misplaced. In Crago, a putative father sought to disestablish the parent-child relationship with two children born of a long-term relationship, but outside of marriage. No other putative fathers were identified. The court found in that case that attempting to sever the father's parental rights and obligations would render the children "fatherless." In the instant case, genetic testing has rebutted the presumption that appellee's husband is the father of the child, and appellant has been identified as the child's biological father. Therefore, Crago is distinguishable from the case at bar and does not control.
 {¶ 11} While it is true that the parties could have proceeded throughout the child's life as if mother's husband were the child's father, there exists no legal bar to appellee pursuing a paternity action and seeking support for V.F. from appellant, nor is the presumption of husband's paternity unrebuttable. Appellee is not "father shopping," as appellant contends, but has a right to seek support from the child's biological father. See Johnson v. Adams (1985), 18 Ohio St.3d 48, 51,479 N.E.2d 866. Moreover, appellee's husband was not a proper party in interest to the suit once genetic testing concluded that appellant was V.F.'s biological father. Kreitzer v. Anderson, 157 Ohio App.3d 434,441, 2004-Ohio-3024, 811 N.E.2d 607.
 {¶ 12} Finally, appellant argues that equity and fairness demand that mother's husband remain V.F.'s legal father and appellant be absolved of any duty of care or support for the child. Yet, contrary to appellant's assertions, there are cases in Ohio which share nearly identical facts with the instant case. Swingle v. Swingle (1989), Franklin App. No. 88AP-852; Crawford County Child Support Enforcement Agency v. Sprague
(Dec. 5, 1997), Crawford App. No. 3-97-13 (legislature intended for a putative father to assert his parentage action even when the mother was married to someone else); Patrick T. v. Michelle L. (Nov. 30, 2000), Wood App. No. WD-00-005. In short, a man who marries a woman while she is pregnant or, in this case, remains married to her after discovery of an adulterous affair, is presumed to be the natural father of any child born from such pregnancy; however, this presumption of paternity can be rebutted by clear and convincing evidence. Johnson v. Adams (1985),18 Ohio St.3d 48, paragraph two of syllabus. While there may be cases where it is not in the child's best interest to rebut the presumption, there is no such evidence here, and we cannot say that the result in the trial court was unreasonable, unconscionable or arbitrary.
 {¶ 13} While we may question the prudence of this family's decision to seek support from and contact with V.F.'s biological father when it is clear that he desires no such relationship, the law is equally clear. The trial court did not abuse its discretion in applying the above-referenced case law and establishing the parent-child relationship between appellant and V.F. Accordingly, we find no merit in appellant's first and eighth assignments of error.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., and McMonagle, J., concur.
 APPENDIX A
Appellant's eight assignments of error:
1. "The trial court abused its discretion and/or erred as a matter of law in disestablishing the parent-child relationship between Appellee's husband, [J.F.] and the minor child, [V.] and in absolving him from paying for her future support pursuant to R.C. 3111.78, and in ordering Appellant to pay his obligation instead, in contrast to case law, as he is the presumed father, he voluntarily stood as parent in loco to the minor child, was legally incapable of adopting the minor child as she already was his `legal' child, he listed himself as father on the birth certificate of the child, and has been the child's father every day of her life for almost nine years when the action was brought."
2. "The trial court erred as a matter of law and/or abused its discretion in refusing to join the presumed father and parent in loco, Appellee's husband, [J.F.] as a party in the underlying action pursuant to Ohio Revised Code Section 3111.07."
3. "The trial court erred as a matter of law and/or abused its discretion in failing to hold an `in-camera' evidentiary hearing to consider the best interests of the minor child, [V.] pursuant to R.C.3111.13(C) to determine whether the blood test results should be admitted into evidence and in deciding whether her presumed father should be absolved of his legal duty to support her given the facts and circumstances in the instant case."
4. "The trial court erred as a matter of law and/or abused its discretion in not applying the doctrine of laches to bar Appellant's (sic) claim for support when she waited over eight (8) years to bring her claim against Appellant and Appellant refrained from the exercise of a legal right, to wit: the fundamental, constitutional right to raise his biological child and lost other financial benefits due to tax considerations."
5. "The trial court erred as a matter of law and/or abused its discretion by not applying the doctrine of estoppel to uphold the agreement of the parties that the legally presumed father, [J.F.] (the husband of the Mother, Appellee) would also act as parent in loco in consideration of Appellant giving up his constitutional right to raise his biological child."
6. "The trial court erred as a matter of law and/or abused its discretion when ordering the Appellant to undergo genetic testing when the mother of the child was married at the time of the child's birth and conception and her husband, [J.F.] is the legally presumed father of the child and, therefore, the state's interest in the welfare of the child did not outweigh the Appellant's right to privacy as the child was not in need of support nor a recipient of public funds."
7. "The trial court erred as a matter of law and/or abused its discretion in failing to join the minor child as a party pursuant to R.C. 3111.07(A) and in failing to appoint her a guardian ad litem."
8. "The trial court abused in (sic) discretion in not recognizing that this is a case of first impression in Ohio in that there is no case law governing the facts of the instant case and the trial court instead applied case law that dealt with (a) enforcement of previously existing domestic relations court orders for child support where none existed in the instant case, (b) in applying case law governing when a child is not being supported, and (c) in not discerning a difference between existing case law that deals with liability of a putative father and the instant case where there was no putative father, but a presumed father instead to the effect that novel issues of equity, fairness and public policy are at stake in the instant case."
[1]The parties are referred to herein by their initials or title in accordance with this court's established policy regarding nondisclosure of identities in juvenile cases.
[2] Appellant's eight assignments of error are included in "Appendix A" of this Opinion.