DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Wood County Court of Common Pleas, Juvenile Division, which entered judgment finding appellee/cross-appellant, Patrick T., the father of Matthew L.; Matthew was born on August 16, 1996, to appellant/cross-appellee, Michelle L., during her marriage to appellant/cross-appellee, Billy L. Also before this court is a cross-appeal by Patrick T. from a judgment of the Wood County Court of Common Pleas, Juvenile Division, which awarded back child support, denied Patrick T.'s request for attorney fees and denied Patrick T.'s request for an order to change the child's surname to his or order a hyphenated name. For the reasons stated herein, this court affirms the judgment of the trial court.
Appellants set forth the following assignment of error:
 "THE TRIAL COURT ERRED BY DENYING DEFENDANTS' MOTION TO DISMISS."
Appellee/cross-appellant sets forth the following cross-assignments of error:
"APPELLEE'S ASSIGNMENTS OF ERROR
 "1. The trial court erred when it awarded back child support but did not order back (or make up) visitation.
 "2. The trial court erred when it failed to award the Plaintiff any attorney fees, costs, or expenses and/or failed to set a separate hearing on the attorney fee issue.
 "3. The trial court erred when it failed to order a change in the child's surname or order a hyphenated name."
The following facts are relevant to this appeal. On July 23, 1996, Patrick filed a motion to establish paternity; he also requested genetic testing of Michelle's yet unborn child, sought to establish child support and visitation and to have the child's surname be his. In his complaint, Patrick set forth the following: that Michelle and Billy had lived separate and apart for more than three years without cohabitation and that Michelle's parents[1] had been named her legal guardians under a medical emergency guardianship by the probate court. On August 8, 1996, the trial court granted a motion to stay the parentage proceedings filed by Michelle's parents requesting a stay until after the child's birth. On January 2, 1997, the magistrate granted appellees' oral motion made on December 18, 1996 and referred the matter to the Wood County Child Support Enforcement Agency ("CSEA") for administrative paternity action. On September 5, 1997, the paternity issue was back before the trial court.[2] On November 20, 1997, the trial court ordered that genetic blood testing requested by the parties be done on Patrick, Michelle and Matthew, born on August 16, 1996. On March 31, 1998, Patrick filed a motion for an order finding Michelle in contempt of court for failing to comply with the order for genetic blood testing on her and Matthew. Michelle then complied with the genetic testing.
On May 6, 1998, Michelle and Billy filed a motion to dismiss the paternity action on grounds that Michelle and Billy were married at all relevant times and therefore Matthew is legally presumed to be the issue of the marriage; Michelle and Billy also argued that they have a constitutionally protected interest in maintaining the integrity of their family. Patrick filed a memorandum in opposition and Michelle and Billy filed a reply. On July 31, 1998, the magistrate entered his decision in which he found that although Michelle and Billy had been married in 1990, they separated and Michelle and Patrick began living together and continued to do so for approximately three years; that Michelle gave birth to Matthew in August 1996; and that although Michelle and Billy continued to be married, they had not lived together since prior to their separation. The magistrate denied the motion to dismiss. Michelle and Billy timely filed objections to the magistrate's decision; Patrick filed an opposing motion. Michelle requested an evidentiary hearing on the motion to dismiss. On October 27, 1998, a hearing on the motion to dismiss was held before the trial judge. On November 19, 1998, the trial court entered its judgment entry in which it found that the magistrate's findings of facts were correct; the trial court also correctly noted that Michelle lived with Patrick until she was hospitalized in a diabetic coma in March 1996. The trial court denied the motion to dismiss.
Michelle and Billy filed a notice of appeal; Patrick filed a motion to dismiss the appeal for the reason that there was no final appealable order. On February 10, 1999, this court granted the motion to dismiss.
A Court Appointed Special Advocate ("CASA") was appointed for Matthew on May 6, 1999. The CASA submitted her report on July 23, 1999, in which she recommended that Michelle be designated the custodial parent of Matthew; that Patrick be granted visitation and pay child support; and that Matthew's last name remain the same as Michelle's. On July 27, 1999, a court trial was held, just over three years after Patrick initiated this action. On August 3, 1999, the trial court issued its judgment entry and, after reviewing the testimony and the genetic testing results, found Patrick to be the father of Matthew. In its judgment entry, the trial court stated:
 "3. The evidence is undisputed that in the over three years since Plaintiff sought a determination of paternity of this child, no paternity decision has been reached. It is also apparent the Defendants in this action have aggressively pursued every angle in an attempt to continue, dismiss, and by necessity therefore delay, an ultimate finding in this case. Particularly in light of the decision reached herein, the delay necessitated primarily as a result of the Motions and documents filed by the Defendants in this action will have the greatest impact on the minor child."
On August 27, 1999, Patrick filed a motion seeking attorney fees and costs for expert witnesses incurred as the result of what Patrick cited as appellants' frivolous contention that Billy was the father of the child; appellants' resistance to genetic testing; and appellants' insistence on a trial at which the individuals who did the genetic testing testified. Appellants filed a memorandum in opposition.
Following a hearing on December 2, 1999 on the issues of visitation, support and the child's surname, the trial court issued a judgment entry on these issues on December 16, 1999. The trial court awarded child support back to the date of Matthew's birth; ordered phased in supervised visitation with Matthew as well as individual counseling for Matthew to assist him with visitation; denied Patrick T.'s request for attorney fees but assessed costs to Michelle and her father; and denied Patrick T.'s request for an order to change the child's surname to his or order a hyphenated name. On January 14, 2000, Michelle and Billy filed a notice of appeal. Patrick filed a notice of appeal the same day.
In their assignment of error, Michelle and Billy argue that the trial court erred in denying their motion to dismiss. Michelle and Billy contend that the trial court erred in relying upon Crawford Cty. ChildSupport Enforcement Agency v. Sprague (Dec. 5, 1997), Crawford App. No. 3-97-13, unreported, and argue that the trial court should have followedMerkel v. Doe (1993), 63 Ohio Misc.2d 490. This court finds no merit in this assignment of error.
In the present case, Patrick filed an action to establish a father-child relationship pursuant to R.C.3111.01 — 3111.19. R.C. 3111.04 provides, in pertinent part:
 "(A) An action to determine the existence or non-existence of the father and child relationship may be brought by * * * a man alleged or alleging himself to be the child's father * * *."
R.C. 3111.03 lists various criteria courts use in determining the paternity of a child:
 "(A) A man is presumed to be the natural father of a child under any of the following circumstances:
 "(1) The man and the child's mother are or have been married to each other, and the child is born during the marriage * * *
"* * *
 "(5) A court or administrative body, pursuant to section 3111.09, 3111.22, or 3115.24 of the Revised Code or otherwise, has ordered that genetic tests be conducted * * * to determine the father and child relationship and the results of the genetic tests indicate a probability of ninety-five per cent or greater that the man is the biological father of the child.
 "(B) * * * A presumption that arises under this section can only be rebutted by clear and convincing evidence that includes the results of genetic testing[.] * * *."
Therefore, we find that pursuant to R.C. 3111.03(A)(1), Michelle and Billy are presumed to be the natural parents of Matthew because they were married to each other and Matthew was born during the marriage. However, we also find that the results of DNA genetic testing allowed under R.C.3111.03(A)(5) determined that the probability of Patrick being Matthew's father was 99.97 percent. The Ohio Supreme Court has previously held that genetic tests are admissible to overcome the presumption of paternity contained in R.C. 3111.03(A)(1). Hulett v. Hulett (1989),45 Ohio St.3d 288, 292. Additionally, the Ohio legislature and the Ohio Supreme Court have both recognized that the presumptions created by R.C.3111.03(A) are not irrebuttable. See R.C. 3111.03(B); Hulett, supra;Johnson v. Adams (1985), 18 Ohio St.3d 48. Rather, they may be rebutted by clear and convincing evidence. Id. In the case sub judice, there was clear and convincing evidence, results of genetic testing with a 99.97 percent probability that Patrick was Matthew's father, to rebut the presumption created by R.C. 3111.03(A).
Based upon this court's review of the above statutory and case law as well as Crawford Cty. Child Support Enforcement Agency v. Sprague (Dec. 5, 1997), Crawford App. No. 3-97-13, unreported, and Merkel v. Doe
(1993), 63 Ohio Misc.2d 490, this court finds that the trial court did not err in denying the motion to dismiss filed by Michelle and Billy.
Accordingly, appellants' assignment of error is found not well-taken.
In Patrick's first cross-assignment of error, he argues that the trial court erred in awarding back child support and erred in not ordering back or make-up visitation. This court finds no merit in this assignment of error.
R.C. 3111.13, the statutory section which governs an award of child support arising from a parentage action, provides in (F)(3):
 "When a court determines whether to require a parent to pay an amount for that parent's failure to support a child prior to the date the court issues an order requiring that parent to pay an amount for the current support of that child, it shall consider all relevant factors, including, but not limited to, any monetary contribution either parent of the child made to the support of the child prior to the court issuing the order requiring the parent to pay an amount for the current support of the child."
Thus, the statute does not set forth a per se rule which requires or forbids retroactive support. This decision, like others relating to the establishment of support awards, rests in the sound discretion of the trial court. Dunbar v. Dunbar (1994), 68 Ohio St.3d 369, 370.
When reviewing a trial court's judgment with respect to a child support determination, an appellate court's inquiry shall focus on whether the trial court abused its discretion. Hurdelbrink v. Hurdelbrink (1989),45 Ohio App.3d 5. Absent an abuse of discretion, a reviewing court may not disturb that decision. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. In re Jane Doe 1 (1990),57 Ohio St.3d 135; and Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. Inre Jane Doe 1; Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
In In re Adoption of Taylor (1989), 61 Ohio App.3d 500, 503, the court held that an adjudicated natural parent has a duty to support a child from birth. R.C. 3111.13 provides what may be included in a judgment in an action brought to determine the existence or nonexistence of a parent child relationship. Pursuant to R.C. 3111.13(C), a judgment may include "any other provision directed against the appropriate party to the proceeding, concerning the duty of support * * *." Courts have concluded that R.C. 3111.13(C) is broad enough to allow a child support award to be made retroactive to the date of birth of the child. In re Adoption ofSherry (1995), 107 Ohio App.3d 830, 834, fn. 2; see, also, State ex rel.County Dep't of Human Servs. v. Paynther, (Nov. 30, 1994), Summit App. No. 16657, unreported.
R.C. 3111.13(F)(3) sets forth factors that the court must consider when determining whether to award support prior to the date of the court order: "[The court] shall consider all relevant factors, including, but not limited to, any monetary contribution either parent of the child made to the support of the child prior to the court issuing the order * * *." Furthermore, as noted by the court in Sharp v. Sayre (Oct. 22, 1990), Scioto App. No. 1855, unreported, fn. 2:
 "The uncontroverted evidence at trial also indicated that appellant had persistently denied appellee and his parents visitation with the parties' minor child. However, since a support order cannot be ignored because a corresponding visitation order is not complied with, see, e.g. Flynn v. Flynn (1984), 15 Ohio App.3d 34, the trial court could not have considered the lack of visitation as a factor in not allowing child support retroactive to the date of the minor child's birth. * * *"
Although this court understands Patrick's frustration and disappointment with the slow progress of this case, the trial court did not abuse its discretion in awarding retroactive child support and in not awarding back or make-up visitation.
Accordingly, Patrick's first cross-assignment of error is found not well-taken.
In Patrick's second cross-assignment of error, he argues that the trial court erred in not awarding attorney fees. This court finds no merit in this assignment of error. While the Uniform Parentage Act includes attorney fees as a portion of the costs which may be awarded in a parentage proceeding, the Ohio version of the Uniform Parentage Act excludes attorney fees. Sutherland v. Sutherland (1989),61 Ohio App.3d 154, 157. As stated by the court in Dunson v. Aldrich
(1988), 54 Ohio App.3d 137, 143: "it was apparently the intention of the General Assembly to exclude attorney fees from an award fashioned by the domestic relations court under R.C. Chapter 3111." Thus, the trial court had no authority under R.C. 3111.14 to assess attorney fees in a paternity proceeding.
Accordingly, Patrick's second cross-assignment of error is found not well-taken.
In Patrick's third cross-assignment of error, he argues that the trial court erred when it failed to order a change in the child's surname or to order a hyphenated name. This court finds no merit in this assignment of error.
The Ohio Supreme Court in Bobo v. Jewell (1988), 38 Ohio St.3d 330, syllabus, held:
 "1. Pursuant to R.C. 3111.13(C), a court of common pleas may determine the surname by which the child shall be known after establishment of the existence of the parent and child relationship, and a showing that the name determination is in the best interest of the child.
 "2. In determining the best interest of the child concerning the surname to be used when parents who have never been married contest a surname, the court should consider: the length of time that the child has used a surname, the effect of a name change on the father-child relationship and on the mother-child relationship, the identification of the child as part of a family unit, the embarrassment, discomfort or inconvenience that may result when a child bears a surname different from the custodial parent's, the preference of the child if the child is of an age and maturity to express a meaningful preference and any other factor relevant to the child's best interest. Courts should consider only those factors present in the particular circumstances of each case."
In In re Willhite (1999), 85 Ohio St.3d 28, 32, the Ohio Supreme Court restated the Bobo factors and added two new factors:
 "[I]n determining whether a change of a minor's surname is in the best interest of the child, the trial court should consider the following factors: the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child; and any other factor relevant to the child's best interest." (Emphasis added and citations omitted.)
When reviewing a decision that a child's name should be changed, a reviewing court is not free to substitute its judgment for that of the trial court. In re Jane Doe 1 (1990), 57 Ohio St.3d 135. The determination of what is in the best interest of the child is within the sound discretion of the trial court. An abuse of discretion involves more than an error of judgment. It is an attitude on the part of the court that is unreasonable, unconscionable or arbitrary. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
Bobo and Willhite, supra, clearly require a showing on the part of the movant that the name change is in the child's best interest. The Ohio Supreme Court has set forth factors for the trial court to consider in determining the best interest of the child in both cited cases. After a thorough examination of the record in this case, this court finds that the only evidence in support of the name change consisted of Patrick's testimony at the hearing that Matthew was the only male heir in his family and that Patrick wanted his son to have his surname. In contrast, Matthew's CASA recommended that his name not be changed because Michelle and Billy's last name has been part of the child's known identity for all of the child's life. Therefore, this court finds that the trial court did not err and abuse its discretion when it failed to order a change in the child's surname or to order a hyphenated name.
Accordingly, Patrick's third cross-assignment of error is found not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Wood County Court of Common Pleas is affirmed. Appellants/cross-appellees and appellee/cross-appellant are ordered to pay equally the court costs of this appeal.
Peter M. Handwork, J., James R. Sherck, J., Mark L. Pietrykowski, J., JUDGES CONCUR.
 ____________________________ JUDGE
[1] Michelle's parents were named in Patrick's initial filing because they were Michelle's guardians at the time. They are not parties to this appeal.
[2] In its July 29, 1999, judgment entry, the trial court noted that CSEA refused to do anything administratively presumably because appellees remained legally married and no "paternity" issue existed in their eyes.